UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

K.K., a Child with a Disability, by his Parent
and Next Friend, T.K.,
                             Plaintiff,

     v.                                                            6:07-CV-537

VERNON-VERONA-SHERRILL CENTRAL
SCHOOL DISTRICT,
                             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                  OF COUNSEL:

OFFICE OF ANDREW K. CUDDY         ANDREW K. CUDDY, ESQ.
Attorneys for Plaintiff                        JASON H. STERNE, ESQ.
5888 Main Street
Williamsville, New York 14221

GIRVIN & FERLAZZO, P.C.                KAREN S. NORLANDER, ESQ.
Attorneys for Defendant                    GREGG T. JOHNSON, ESQ.
20 Corporate Woods Boulevard, 2nd Floor
Albany, New York 12211-2350

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

       Plaintiff T.K. ("plaintiff") brings this action on behalf of her son, K.K., a child with a

disability, against defendant Vernon-Verona-Sherrill Central School District ("District" or

"defendant") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§

1400-82 (West 2000 & Supp. 2008). Specifically, plaintiff appeals a decision of the New

York Education Department's State Review Officer ("SRO") who found that an individualized

education plan ("IEP") recommended by the District in October 2005 did not deny K.K. a free appropriate public education ("FAPE") under the IDEA.[1]

The District moves for summary judgment under Federal Rule of Civil Procedure 56. Plaintiff opposes. Plaintiff cross-moves for summary judgment under Rule 56. The District opposes. Oral argument was heard on July 15, 2008, in Utica, New York. Decision was reserved.

## II.  FACTS[2]

K.K., born in 2000, was identified as a child with a disability in 2002. Around that time, he began receiving speech-language therapy and developmental group services through the District's Early Intervention Program.

In August 2003, the District's Committee on Preschool Special Education ("CPSE") determined that K.K. was eligible for special education services. Shortly thereafter, he entered a full-day preschool program at Upstate Cerebral Palsy ("UCP") where he received daily services from a special-education teacher, speech-language therapy three times per week, and counseling two times per week.

In September 2003, after having been observed by a psychologist, K.K. was diagnosed with Pervasive Developmental Disorder-Not Otherwise Specified ("PDD-NOS"), a developmental disability on the autism spectrum. At that time, he exhibited significant delays

---

[1] Plaintiff also appeals on the ground that the SRO failed to order the provision of additional services as a remedy for being denied a FAPE, a question that the Impartial Hearing Officer ("IHO") answered in the negative. However, that "ground" for appeal is more properly treated as a request for relief. In other words, the sole legal question in this case is whether K.K. was denied a FAPE; if it is found that he was, plaintiff's request for services as a remedy for that denial will be addressed in turn.

[2] For a more extensive account of the facts underlying this action, see the administrative decisions from which it arose. (Norlander Aff. Exs. B at 2-17 & A at 1-6.)

in language and social skills, demonstrated aberrant sensory responses, and had difficulty with transitioning. After an occupational-therapy evaluation in December, the CPSE added three sessions of occupational therapy per week to K.K.'s program.

In June 2004, the CPSE recommended a continuation of K.K.'s then-current program for the 2004-05 school year, except that counseling services would be discontinued. A month later, the CPSE changed the recommended program to one in an integrated classroom at a Board of Cooperative Educational Services ("BOCES") preschool. After plaintiff decided to keep K.K. at home instead of sending him to BOCES, the CPSE changed the recommended program to a home-based program with services from a special education itinerant teacher, as well as speech-language, occupational, and physical therapies. However, in February 2005, based in part on a report from the itinerant teacher, the CPSE again recommended that K.K. be placed in a BOCES program.

In June 2005, based on recent observations of K.K. interacting well in a regular kindergarten classroom, the CSE, despite K.K.'s low assessment scores, changed the recommended program to a regular education program with additional services. K.K.'s 2005-06 IEP described K.K. as having moderate to severe language delay with a need to improve his ability to follow complex directions, respond to questions that require reasoning or attention to detail, expand the length and complexity of his utterances, and improve his conversational skills. It called for placement in a regular kindergarten classroom with speech-language, occupational, and physical therapy services.

Plaintiff was unhappy with the 2005-06 IEP and in October 2005 the CSE again revised K.K.'s IEP in an attempt to address some of her concerns. The revised IEP, which kept K.K. in the regular education kindergarten classroom, called for the same level of

occupational and physical therapy, individual and group speech-language therapy six times per week, counseling one time per week, bi-weekly family networking support, use of a communication tracking sheet, Special Education Training and Resource Center family support, transitional support services, consultations with the school's most experienced special education teacher, consultations with private special education consultant Nancy Kelly ("Kelly"), and an annual presentation on autism to the school staff.

In November 2005, Kelly observed K.K. and issued a report based on her observations. Kelly found K.K. to be a typical kindergarten student who did not need more assistance than his classmates. She disagreed with plaintiff's assertion that K.K. needed a teaching assistant assigned to him on a one-to-one basis. Otherwise, Kelly's report was generally positive and optimistic with regard to K.K.'s development.

In February 2006, plaintiff, still unhappy with what she perceived to be her child's lack of progress, requested a hearing before an Impartial Hearing Officer ("IHO"). Kelly was among the many witnesses who testified at the hearing. She stated, among other things, that in her opinion K.K. "would benefit from some extra help in his reading and writing, but that could be done through a resource room or that [which] is typically given in a regular ed[ucation] setting." (Def.'s Notice of Mot., Hr'g Tr. 537.)

In November 2006, the IHO issued a decision concluding that while it was "a very close call" (Norlander Aff. Ex. B at 27), the 2005-06 IEP denied K.K. a FAPE by failing to offer "special education services through direct consultant teacher or resource room services," id. at 36. Specifically, the IHO found that while K.K. was successful in the preschool environment and otherwise demonstrated normal behavior for a kindergarten-age child, he did not see "evidence to support a transition to a full-time general education class

with seventeen students and only one teacher in the room without additional direct support by a special educator." Id. In reaching that conclusion, the IHO took note of Kelly's testimony that K.K. would benefit from resource-room services. Finally, the IHO denied plaintiff's request for other additional services as a remedy for the denial of a FAPE.

The District appealed and plaintiff cross-appealed the IHO's decision. In February 2007, the SRO sustained the District's appeal and annulled the IHO's decision on the ground that the 2005-06 IEP provided K.K. with a FAPE. More particularly, the SRO disagreed with the IHO's contention that there was no evidence to support the position that K.K. was ready for a regular education kindergarten class without direct support from a special education teacher. Also, the SRO stated that he was "not persuaded" by Kelly's testimony that K.K. would benefit from extra help with reading and writing in the form of resource-room services because it "was based on an observation of the child that occurred after the October 2005 CSE meeting, and this opinion was not included in [Kelly's] December 2005 report." (Norlander Aff. Ex. A at 10.)

Plaintiff filed this action in May 2007.

## III. **STANDARD OF REVIEW**

"IDEA actions in federal court generally are resolved by examination of the administrative record in a summary judgment procedural posture." J.R. v. Bd. of Educ. of the City of Rye Sch. Dist., 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004). However, the typical summary judgment standard of review does not apply when summary judgment motions are made in IDEA actions. Rather, federal courts conduct an independent judicial review of such actions and "must base their decisions on the 'preponderance of the evidence,' taking into account not only the record from the administrative proceedings, but also any further

evidence presented before the District Court by the parties." Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 380 (2d Cir. 2003); see Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 367 (2d Cir. 2006). The Supreme Court, however, has made clear that "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 206, 102 S. Ct. 3034, 3051 (1982). Federal courts must give "due weight" to the administrative proceedings, id., and be mindful that they "lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.'" Id. at 208, 102 S. Ct. at 3052 (quoting San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 42, 93 S. Ct. 1278, 1301 (1973)). Deference is particularly appropriate when the state hearing officer's review has been thorough and careful. See Walczak v. Fla. Union Free Sch. Dist., 142 F. 3d 119, 129 (2d Cir. 1998).

## IV. DISCUSSION

The overall purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)-(B).

A free appropriate public education, or FAPE, is defined as follows:

[S]pecial education and related services that-- (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C)

>     include an appropriate preschool, elementary school, or secondary school
>     education in the State involved; and (D) are provided in conformity with
>     the individualized education program required under section 1414(d) of
>     this title.

20 U.S.C.A. § 1401(9). Typically, a FAPE is offered when (a) the school district complies with the procedural requirements of the IDEA, and (b) the IEP developed by way of those procedures is "reasonably calculated to enable the child to receive educational benefits." Rowley, 458 U.S. at 206-07, 102 S. Ct. at 3051; see Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005). "A school district is not, however, required to furnish 'every special service necessary to maximize each handicapped child's potential.'" Cerra, 427 F.3d at 195 (quoting Rowley, 458 U.S. at 199, 102 S. Ct. at 3047). "Rather, a school district fulfills its substantive obligations under the IDEA if it provides an IEP that is 'likely to produce progress, not regression,' and if the IEP affords the student with an opportunity greater than mere 'trivial advancement.'" Id. (quoting Walczak, 142 F.3d at 130).

Plaintiff does not argue that the District failed to comply with the procedural requirements of the IDEA; thus, the sole question is whether the District complied with the substantive requirements, i.e., whether the 2005-06 IEP was reasonably calculated to enable K.K. to receive educational benefits.

Plaintiff's motion is based largely on the argument that the SRO made a credibility determination – which, to be sure, is the prerogative of the IHO not the SRO – with respect to Kelly's testimony that K.K. would benefit from extra help with reading and writing in the form of resource-room services. To reiterate, the SRO stated that he was not persuaded by Kelly's testimony because (1) it was based on an observation of K.K. that occurred after the October 2005 CSE meeting, and (2) her opinion that K.K. would benefit from such services

was not included in her December 2005 report.  The SRO's second ground for discounting Kelly's testimony was based on an improper credibility determination.  The IHO found Kelly's testimony to be credible despite the fact that she expressed opinions in connection with the November 2005 observation that were not recorded in the December 2005 report.  However, the SRO's first ground for discounting Kelly's testimony was based not on an improper credibility determination, but rather on the notion that the IHO improperly considered retrospective evidence.  While the Second Circuit has not addressed the question whether it is error for administrative officers to consider evidence not available to the CSE at the time it devised the IEP, some courts in this Circuit have answered that question in the affirmative.  See Antonaccio v. Bd. of Educ. of Arlington Cent Sch. Dist., 281 F. Supp. 2d 710, 724 (S.D.N.Y. 2003); J.R. v. Bd. of Educ. of City of Rye Sch. Dist., 345 F. Supp. 2d 386, 395 (S.D.N.Y. 2004).  The SRO apparently relied on that line of cases in finding that Kelly's testimony was "not persuasive."  Thus, he did not make an improper credibility determination in that respect.

Even if Kelly's testimony was accepted as true and given due weight, it certainly would not be dispositive of the issue.  Kelly testified that K.K. "<u>would</u> benefit from some extra help in his reading and writing, but that could be done through a resource room or that [which] is typically given in a regular ed[ucation] setting."  (Def.'s Notice of Mot., Hr'g Tr. 537 (alternations added).)  It does not necessarily follow from that testimony that K.K. would not benefit without such services.  Thus, in light of IDEA case law, see Cerra, 427 F.3d at 195 ("A school district is not, however, required to furnish 'every special service necessary to maximize each handicapped child's potential.'" (quoting Rowley, 458 U.S. at 199, 102 S. Ct. at 3047)), Kelly's testimony is not as weighty as plaintiff suggests.

- 8 -

In any event, plaintiff has failed to show that the SRO's decision is undeserving of deference. As the District points out, the SRO's twelve-page decision was based on an administrative record consisting of more than 770 pages of testimony and 320 exhibits. It is thorough and well-reasoned. The SRO properly marshaled and weighed the evidence before him in arriving at his conclusion that the 2005-06 IEP was reasonably calculated to enable K.K. to receive educational benefits. He reviewed, among other things, evidence of K.K.'s conduct during his time in preschool, observations conducted by the principal and CSE chairperson at the start of the 2005-06 school year, testimony by his kindergarten teacher, special education teacher, and speech and language teacher. Much of the aforementioned evidence indicated that K.K., while undeniably suffering from language and social delays, functioned like a typical kindergarten-age child.

Notably, despite his ultimate conclusions, the IHO's decision seems to support the SRO's finding. The IHO stated that it was "a very close call" and conceded that K.K. "performed well in the general education class in the fall of 2005 and prior to the October CSE, despite substantial absences from school." (Norlander Aff. Ex. B at 27.) The IHO also recognized that all of K.K.'s service providers participated in the October 2005 CSE and unanimously agreed that K.K. was progressing in the general education kindergarten classroom.

Indeed, an independent review of the evidence relied upon by the IHO and SRO, as well as the rest of the administrative record, confirms that the 2005-06 IEP was reasonably calculated to enable K.K. to receive educational benefits.

As a result, the issue of whether plaintiff is entitled to additional services as a remedy for being denied a FAPE need not be addressed.

## V. CONCLUSION

Therefore, it is

ORDERED that

1. The State Review Officer's decision is AFFIRMED;

2. Defendant's motion for summary judgment is GRANTED:

3. Plaintiff's cross-motion for summary judgment is DENIED; and

4. The complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: August 25, 2008

Utica, New York.